UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON.COM SERVICES LLC, and AMAZON WEB SERVICES, INC.,<br><br>Defendants. | Case No.  7:25-cv-00165<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST AMAZON.COM, INC., AMAZON.COM SERVICES LLC, AND AMAZON WEB SERVICES, INC.**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. ("AlmondNet") and Intent IQ, LLC ("Intent IQ") (collectively, "Plaintiffs") make the following allegations against Defendants Amazon.com, Inc. Amazon.com Services LLC, and Amazon Web Services, Inc. (collectively, "Amazon" or "Defendants"):

**INTRODUCTION AND PARTIES**

1. This complaint arises from Defendants' unlawful infringement of the following United States patent owned by Plaintiffs, which generally relates to novel internet / network based advertising systems and methods: United States Patent No. 10,321,198 (the "Asserted Patent"). Plaintiffs owns all right, title, and interest in each of the Asserted Patent to file this case.

2. AlmondNet, Inc. is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City,

1

NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC are collectively referred herein as "Plaintiffs."

3. Founded in 1998, AlmondNet has developed an extensive suite of industry-leading targeted advertising solutions and products, is focused on R&D and the licensing of its extensive portfolio of enabling technology and intellectual property covering numerous areas of the targeting landscape and ecosystem, including profile based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

4. Intent IQ is a leading company in the field of cross-device-based ad targeting, retargeting, audience extension, and attribution. IIQ's "Dynamic Device Map" identifies a given user across multiple device types, including laptops, desktops, smartphones, tablets, and televisions, so as to assist advertisers in delivering targeted ads to consumers on all of their screens. Intent IQ can facilitate ad targeting based on profile data aggregated from activity on any of a user's screens, as well as measure the impact of previously delivered ads on the same or different screen.

5. On information and belief, Defendant Amazon.com, Inc. is a Delaware corporation with a listed registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Amazon.com Inc. has a principal place of business at 410 Terry Ave. North, Seattle, Washington 98109-5210. Amazon.com Inc. may also be served with process via its registered agent Corporation Service Company 300 Deschutes Way SW Ste 208 MC-CSC1, Tumwater, WA, 98501.

6. On information and belief, Defendant Amazon.com Services LLC (formerly "Amazon.com Services Inc." and referred to herein as "Amazon Services") is a limited liability

company organized under the laws of the state of Delaware, with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon Services is a wholly owned subsidiary of Amazon. Amazon Services is registered to do business in the State of Texas and may be served with process via its registered agent in Texas, Corporation Service Company dba CSC-Lawyers Incorporating Service Company at 211 7th Street, Suite 620, Austin, TX 78701-3218. Amazon Services may also be served via its Delaware registered agent Corporation Service Company, 251 Little Falls Dr., Wilmington, Delaware 19808.

7.     On information and belief, Amazon Web Services, Inc. is a Delaware corporation with its principal place of business at 410 Terry Ave. North, Seattle, Washington 98109. Amazon Web Services, Inc. may be served through its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. On information and belief, Amazon Web Services, Inc. is registered to do business in the State of Texas and has been since at least May 3, 2006. On information and belief, Amazon Web Services, Inc. is a wholly-owned subsidiary of Amazon.com, Inc.

## JURISDICTION AND VENUE

8.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has personal jurisdiction over Defendants in this action because Defendants have committed acts within this District giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this

District by, among other things, importing, offering to sell, and selling products and services that infringe the Asserted Patents.

10.     Venue is proper in this District. For example, Amazon has a regular and established place of business, including, e.g., at Amazon Tech Hub located at 11501 Alterra Parkway, Austin, TX.

## FACTUAL ALLEGATIONS

11.     AlmondNet placed Defendants on notice of the Asserted Patent.

12.     On July 24, 2019, AlmondNet sent a notice letter to Amazon.com, Inc. identifying how Amazon infringes numerous patents in AlmondNet's portfolio, and explained how Amazon could contact AlmondNet to discuss licensing AlmondNet's patent portfolio. With respect to U.S. Patent No. 10,321,198 (the "'198 patent"), the notice letter specifically explained that "[b]ased on our investigation to date, Amazon's demand side platform ("DSP") service, which we understand is often marketed under the name or brand Amazon DSP, infringes several patents owned by the AlmondNet Group, including at least the following: . . . U.S. Patent 10,321,198 (including at least claims 1-5 and 8-33). . . . If Amazon wishes to discuss a license to the AlmondNet Group patents, please give myself or any of the following lawyers a call . . ." *See* Ex. 1 at 1-3. One of the exhibits attached to the notice letter describes DSP infringement of the '198 patent. *See* Ex. 2 at 152-153 ("Exhibit D"). Exhibit D's discussion of the "**Infringement scenarios**" explained that "DSPs cause delivery of a targeted ad to an online device following an OTT ad presentation via a STB associated with the online device using a probabilistic device map"[1] and that "DSPs note user action on an online device and attribute it to a TV ad previously presented via a STB associated

---

[1] As mentioned in the exhibit, "[t]he term 'OTT' stands for 'Over the Top or OTT' and refers to delivery of digital video to televisions via Internet-connected devices (or functionality within the television itself)."

with the online device using a probabilistic device map." *Id.* at 152. Prior to discussing the '198 patent, the "**[b]rief explanation of infringement**" section from Exhibit D provided an overview of infringement for U.S. Patent No. 8,595,069: "[t]he DSP computer system performs the patented method"; "The DSP computer receives a 'notification,' namely a 'tracking event' as a result of ad rendering via the STB. The 'tracking event' (notification) signifies presentation of a TV ad via STB, specifically an OTT video impression or a presentation progress measurement (reported using various techniques compatible with the VAST standard), when ads are streamed either to smart TVs or streaming devices (e.g., Roku, AppleTV, Amazon Fire, Google Chromecast). The notification includes an 'STB identifier,' such as Roku's 'RIDA' or AppleTV's 'advertisingIdentifier,' or an IP address"; "[t]he DSP computer performs either of two types of 'first action': (a) Causing a targeted ad to be delivered to the online device based on a particular type of tracking event . . . ; or (b) attributing user action on the online device to the presentation of the TV ad via the associated STB, which presentation is indicated by a particular type of tracking event . . ."; and "[t]he association of STB and online device is done without use of PII and based on common LAN, using probabilistic device maps, as shown in Yahoo claim charts related to U.S. Patent 8,677,398." *Id.* at 152-153. Exhibit D then explained that the difference between claim 1 of the '069 patent and claim 1 of the '198 patent "is that the 'common LAN' association is not required in part (c), but the 'no-PII' limitation remains. The nature of the infringement is parallel."[2] *Id.* at 153. No resolution was reached was reached as a result of this communication.

13.     On October 25, 2019, AlmondNet sent another communication to Amazon again indicating that Amazon infringes numerous patents in AlmondNet's portfolio, including the '198 patent, and again explaining how Amazon could contact AlmondNet to discuss licensing that

---

[2] Exhibit D inadvertently refers to the '198 patent as "U.S. Patent 8,595,069" in this discussion.

portfolio. No resolution was reached.

14. On October 25, 2019, AlmondNet sent another communication to Amazon again indicating that it infringes numerous patents in AlmondNet's portfolio, including the '198 patent, and again explaining how Amazon could contact AlmondNet to discuss licensing that portfolio. *See* Ex. 3. Again, no resolution was reached.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 10,321,198

15. AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

16. Plaintiffs owns all rights, title, and interest in U.S. Patent No. 10,321,198, titled "systems and methods for dealing with online activity based on delivery of a television advertisement," issued on June 11, 2019 ("the '198 patent"). A true and correct copy of the '198 patent is attached as Exhibit 4.

17. On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Amazon's computer systems that implement and provide Amazon Ads, including but not limited to components such as Amazon DSP, Amazon DSP, Performance +, Brand+, Amazon Attribution, Attribution Tags, AWS Neptune, Ad Relevance, Amazon Marketing Cloud, and Amazon Prime Video with ads) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '198 patent.

18. The infringement of the '198 patent is also attributable to Amazon. Amazon and/or users of the Accused Instrumentalities direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '198 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

19.     Defendants' infringement has been and is willful. Defendants knew of, or were willfully blind to, the '198 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, Plaintiffs and Amazon communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio and Amazon's infringement of it. In these discussions, AlmondNet notified Amazon of its infringement of the '198 patent at least as early as July 24, 2019. The notice letter explained that "[b]ased on our investigation to date, Amazon's demand side platform ("DSP") service, which we understand is often marketed under the name or brand Amazon DSP, infringes several patents owned by the AlmondNet Group, including at least the following: . . . U.S. Patent 10,321,198 (including at least claims 1-5 and 8-33). . . . If Amazon wishes to discuss a license to the AlmondNet Group patents, please give myself or any of the following lawyers a call . . ." *See* Ex. 1 at 1-3. One of the exhibits attached to the notice letter provided a discussion of the "**Infringement scenarios.**" *See* Ex. 2. Specifically, Exhibit D explained that "DSPs cause delivery of a targeted ad to an online device following an OTT ad presentation via a STB associated with the online device using a probabilistic device map"[3] and that "DSPs note user action on an online device and attribute it to a TV ad previously presented via a STB associated with the online device using a probabilistic device map." *Id.* The "**[b]rief explanation of infringement**" section of the discussion explained that "[t]he DSP computer system performs the patented method"; "The DSP computer receives a 'notification,' namely a 'tracking event' as a result of ad rendering via the STB. The 'tracking event' (notification) signifies presentation of a TV ad via STB, specifically an OTT video impression or a presentation progress measurement (reported using various techniques compatible with the VAST standard), when ads

---

[3] As mentioned in the exhibit, "[t]he term 'OTT' stands for 'Over the Top or OTT' and refers to delivery of digital video to televisions via Internet-connected devices (or functionality within the television itself)."

are streamed either to smart TVs or streaming devices (e.g., Roku, AppleTV, Amazon Fire, Google Chromecast). The notification includes an 'STB identifier,' such as Roku's 'RIDA' or AppleTV's 'advertisingIdentifier,' or an IP address"; "[t]he DSP computer performs either of two types of 'first action': (a) Causing a targeted ad to be delivered to the online device based on a particular type of tracking event . . . ; or (b) attributing user action on the online device to the presentation of the TV ad via the associated STB, which presentation is indicated by a particular type of tracking event . . ."; and "[t]he association of STB and online device is done without use of PII and based on common LAN, using probabilistic device maps, as shown in Yahoo claim charts related to U.S. Patent 8,677,398." *Id.* Exhibit D then explained that the difference between claim 1 of the '069 patent and claim 1 of the '198 patent "is that the 'common LAN' association is not required in part (c), but the 'no-PII' limitation remains. The nature of the infringement is parallel."[4] *Id.* Despite Defendants' knowledge of or willful blindness to the '198 patent as a result of the 2019 communications as well as the filing of this complaint, Defendants continued and still continue to infringe the '198 patent. In doing so, Defendants knew, or should have known, that their conduct amounted to infringement of the '198 patent. Accordingly, Defendants are liable for willful infringement.

20.     The Accused Instrumentalities perform all claim limitations of one or more method claims of the '198 patent. A claim chart comparing independent method claim 1 of the '198 patent to a representative Accused Instrumentalities is attached as Exhibit 5, which is hereby incorporated by reference in its entirety.

21.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Amazon has injured Plaintiffs and is liable for infringement of

---

[4] Exhibit D inadvertently refers to the '198 patent as "U.S. Patent 8,595,069" in this discussion.

the '198 patent pursuant to 35 U.S.C. § 271.

22. As a result of Amazon's infringement of the '198 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Amazon's infringement, but in no event less than a reasonable royalty for the use made of the invention by Amazon, together with interest and costs as fixed by the Court.

23. Plaintiffs are entitled to past damages for Defendants' infringement of the '198 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '198 patent.

24. Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '198 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter:

a. A judgment in favor of Plaintiffs that Amazon has infringed the Asserted Patent, either literally and/or under the doctrine of equivalents;

b. A judgment in favor of Plaintiffs that Amazon has willfully infringed the Asserted Patent;

c. A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patent;

d. A judgment and order requiring Amazon to pay Plaintiffs their damages, costs, expenses, and pre-judgment and post-judgment interest for Amazon's infringement of the Asserted Patent;

e. A judgment and order requiring Amazon to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

f. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs its reasonable attorneys' fees against Amazon; and

g. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: April 15, 2025

Respectfully submitted,

*/s/ Reza Mirzaie*

Reza Mirzaie
Marc A. Fenster
Brian D. Ledahl
Adam S. Hoffman
James A. Milkey
Philip X. Wang
James Tsuei
Jonathan Ma
Joshua M. Scheufler
Daniel B. Kolko
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
bledahl@raklaw.com
ahoffman@raklaw.com

jmilkey@raklaw.com
pwang@raklaw.com
jtsuei@raklaw.com
jma@raklaw.com
jscheufler@raklaw.com
dkolko@raklaw.com

*Attorneys for Plaintiffs AlmondNet, Inc. and Intent IQ, LLC*

11